1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   JOHN J. STOIA, JR. (141757)
    RACHEL L. JENSEN (211456)
3   PHONG L. TRAN (204961)
    655 West Broadway, Suite 1900
4   San Diego, CA  92101
    Telephone: 619/231-1058
5   619/231-7423 (fax)
    johns@rgrdlaw.com
6   rachelj@rgrdlaw.com
    ptran@rgrdlaw.com
7
    Attorneys for Plaintiff
8
                  UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10
                   SAN FRANCISCO DIVISION                **LB**
11
    SARAH GOSLING, on Behalf of Herself and  )   **VIA FAX**
12  All Others Similarly Situated,           )
                                             )
13                          Plaintiff,       )   No. **11**    **2094**
                                             )
14       vs.                                 )   **CLASS ACTION**
                                             )
15  HUNGRY MACHINE, INC. d/b/a               )   COMPLAINT FOR:
    LIVINGSOCIAL.COM,                        )
16                                           )   (1) VIOLATIONS OF THE CREDIT CARD
                            Defendant.       )       ACCOUNTABILITY RESPONSIBILITY
17  _____)       AND DISCLOSURE ACT AND THE
                                                     ELECTRONIC FUND TRANSFER ACT,
18                                                   15 U.S.C. §1693, *et seq.*;

19                                               (2) VIOLATIONS OF THE UNFAIR
                                                     COMPETITION LAW, CALIFORNIA
20                                                   BUSINESS AND PROFESSIONS CODE
                                                     §17200, *et seq.*;
21
                                                 (3) VIOLATIONS OF THE FALSE
22                                                   ADVERTISING LAW, CALIFORNIA
                                                     BUSINESS AND PROFESSIONS CODE
23                                                   §17500, *et seq.*; and

24                                               (4) VIOLATIONS OF THE CONSUMERS
                                                     LEGAL REMEDIES ACT, CALIFORNIA
25                                                   CIVIL CODE §1750, *et seq.*

26                                               DEMAND FOR JURY TRIAL

27

28

Plaintiff Sarah Gosling ("Plaintiff"), by and through her undersigned attorneys, brings this action on behalf of herself and on behalf of a class of all others similarly situated, against Hungry Machine, Inc. d/b/a LivingSocial.com ("LivingSocial" or "Defendant"), for compensatory damages and equitable, injunctive, and declaratory relief. Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations which specifically pertain to Plaintiff (which are alleged upon personal knowledge).

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of herself and other similarly situated consumers nationwide who purchased gift certificates for products and services from LivingSocial (the "Class"). These gift certificates, called "vouchers" by Defendant, are sold and issued with expiration dates that are deceptive and illegal under both federal and state laws.

2.      LivingSocial is a web-based company that purports to offer discounted deals on a variety of products and services, including restaurants and bars, salons and spas, clothing and other retail items, fitness classes, and other recreational courses, among other things.

3.      LivingSocial offers discounts to consumers *en masse* by directly partnering with the retail businesses and merchants that provide the products or services. LivingSocial promises to increase the sales volume of its retail partners by sending out "Daily Deal" e-mails to its massive subscription base (comprised of millions of consumers nationwide), highlighting and promoting the products and services of its retail partners.

4.      Once consumers purchase a LivingSocial gift certificate for a particular "Daily Deal," LivingSocial charges each consumer the advertised purchase amount. LivingSocial then sends a confirmatory e-mail to each purchasing consumer with a link to its website for downloading and printing the LivingSocial gift certificate, which then may be redeemed with the retail business offering the product or service for a limited period of time.

5.      LivingSocial partners with thousands of retail businesses and merchants around the country. LivingSocial and its retail partners share in the revenues from the sale of LivingSocial gift certificates.

6.      The problem with LivingSocial's business model is that LivingSocial and its retail partners sell and issue gift certificates with relatively short expiration dates, knowing that many consumers will not use the gift certificates prior to the expiration date. However, the federal Credit Card Accountability Responsibility and Disclosure Act ("CARD Act") and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §1693, *et seq.*, specifically prohibit the sale and issuance of gift certificates, such as those sold by LivingSocial, with expiration periods of less than five years. California Civil Code §1749.5 goes even further than this federal floor, prohibiting the sale and issuance of gift certificates with *any* expiration period.

7.      LivingSocial's systematic placement of expiration dates on its gift certificates is deceptive and harmful to consumers. LivingSocial effectively creates a sense of urgency among consumers to purchase LivingSocial gift certificates by offering "Daily Deals" for a short amount of time, usually within a 24-hour period. Consumers therefore feel pressured and are rushed into buying the gift certificates and unwittingly become subject to the onerous sales conditions imposed by LivingSocial, including illegal expiration terms, which are relatively short, often just a few months.

8.      LivingSocial and its retail partners bank on the fact that many consumers will not manage to redeem their gift certificates before the limited expiration period – therefore, many consumers will never use their gift certificates, despite already having paid for the particular service or product. Accordingly, LivingSocial and its retail partners reap a substantial windfall from the sale of gift certificates that are not redeemed before expiration, which is precisely the type of harmful business conduct that both Congress and the California State Legislature intended to prohibit.

9.      Plaintiff, like many unsuspecting consumers nationwide, fell victim to LivingSocial's deceptive and illegal conduct and purchased LivingSocial gift certificates bearing expiration dates prohibited by law.

10.     Plaintiff, on behalf of herself and the Class, therefore brings this class action against LivingSocial for equitable (injunctive and/or declaratory) relief, violations of the CARD Act and the EFTA, 15 U.S.C. §1693, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL" or "17200"); the False Advertising Law, Cal. Bus & Prof. Code §17500, *et seq.* ("FAL" or "17500"); and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

1  ("CLRA"). Plaintiff seeks damages and equitable relief on behalf of herself and the Class, which

2  relief includes, but is not limited to, full refunds for Plaintiff and Class members, compensatory and

3  punitive damages, an order enjoining LivingSocial from selling and issuing gift certificates with

4  illegal expiration dates and other onerous terms, costs and expenses, as well as Plaintiff's reasonable

5  attorneys' fees and expert fees, and any additional relief that this Court determines to be necessary or

6  appropriate to provide complete relief to Plaintiff and the Class.

7                                    **INTRADISTRICT ASSIGNMENT**

8         11.    A substantial part of the events or omissions which give rise to the claims in this

9  action occurred in the County of San Francisco, and as such this action is properly assigned to the

10  San Francisco division of this Court.

11                                    **JURISDICTION AND VENUE**

12        12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and the Class

13  Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2). The matter in controversy in this class action

14  exceeds $5,000,000, exclusive of interest and costs, and some members of the Class are citizens of

15  states other than the states in which LivingSocial is incorporated and have their principal place of

16  business. In addition, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over

17  Plaintiff's state law claims.

18        13.    This Court has personal jurisdiction over LivingSocial because it is authorized to do

19  business, and has conducted business, in California; it has specifically marketed, sold and issued

20  LivingSocial gift certificates in California; it has sufficient minimum contacts with this state; and/or

21  sufficiently avails itself to the markets of this state through its promotion, sales, and marketing

22  within this state to render the exercise of jurisdiction by this Court permissible.

23        14.    Venue is proper in this District pursuant to 28 U.S.C. §§1391(a) and (b), because a

24  substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial

25  district.

26                                              **PARTIES**

27        15.    At all times relevant to this matter, Plaintiff, Sarah Gosling, resided and continues to

28  reside in San Francisco, California. During the relevant time period, Ms. Gosling received offers for

CLASS ACTION COMPLAINT                                                                        - 3 -

1 products and services from LivingSocial and purchased a gift certificate based on representations

2 and claims made by LivingSocial. Ms. Gosling purchased LivingSocial gift certificates that were

3 subject to illegal expiration dates.

4      16.   Defendant, Hungry Machine, Inc., d/b/a LivingSocial.com, is a privately-held

5 company incorporated under the laws of the state of Delaware. LivingSocial's corporate

6 headquarters is located in Washington D.C. LivingSocial is registered to do business in the state of

7 California and does business in the state of California. LivingSocial markets, sells and issues its gift

8 certificates to millions of consumers throughout the United States, including hundreds of thousands

9 of consumers in California and in San Francisco County.

10                       **FACTUAL ALLEGATIONS**

11 **LivingSocial's Scheme to Sell and Issue**
**Gift Certificates with Illegal Expiration Dates**

12

13      17.   Launched in July 2009, LivingSocial is a "social-buying" company that promises

14 consumers discounted deals on various products and services in over 140 markets in the United

States. To take advantage of the deals offered by LivingSocial, consumers must sign-up and provide

15 their e-mail address and other information to LivingSocial. Over 20 million people worldwide

16 reportedly have signed-up to receive offers from LivingSocial.

17

18      18.   Each day, LivingSocial sends subscribers in each of the cities it operates a "Daily

19 Deal" e-mail, promoting the particular products or services of the retail businesses with which it has

partnered. LivingSocial sends targeted "Daily Deal" e-mails to approximately 130 geographic

20 markets throughout the United States.

21

22      19.   To arouse consumer interest and create the urgency to buy the "Daily Deal" product or

service, LivingSocial offers the "Daily Deal" for a limited amount of time, usually a 24-hour period.

23 This creates a "shopping frenzy" among consumers who feel pressured to purchase gift certificates for

24 the product or service as quickly as possible. Consumers purchase LivingSocial gift certificates

25 directly through LivingSocial's website or mobile applications, using their credit or debit cards.

26

27

28

20.     LivingSocial also uses electronic social media, such as Facebook and Twitter, to promote and stoke demand for its "Daily Deals," creating additional pressure among consumers to buy LivingSocial gift certificates before time runs out.

21.     After consumers purchase and are charged for the gift certificate, LivingSocial sends a confirmatory e-mail to purchasers with a link to its website, through which purchasers may download and print their gift certificates. Consumers may also purchase and download their gift certificates directly to their mobile devices using an application or by accessing LivingSocial's website directly. LivingSocial gift certificates thereafter may be directly redeemed with the retail businesses offering the products and services.

22.     What distinguishes LivingSocial gift certificates from traditional promotional discounts, coupons or two-for-one deals is that LivingSocial gift certificates are paid for in advance by consumers in exchange for the right to redeem them with retailers, and as such, constitute "gift certificates," as that term is defined by federal and state laws.

23.     Yet, LivingSocial flagrantly continues to impose expiration dates on its gift certificates in violation of federal and state laws and to the detriment of consumers. The expiration periods on LivingSocial gift certificates frequently range just a few months from the date of purchase. Ironically, LivingSocial knows that after it has driven consumers to purchase its gift certificates as quickly as possible, many consumers ultimately will be unable to redeem the gift certificates before the expiration period.

24.     Accordingly, consumers often cannot take advantage and use the product or service for which they paid before the relatively short expiration period imposed by LivingSocial – leaving a substantial windfall for LivingSocial and its retail partners.

25.     In addition to imposing illegal expiration periods, LivingSocial foists other deceptive and unfair conditions on consumers. LivingSocial requires consumers to redeem its gift certificates in the course of a single transaction. Consumers therefore are forced to redeem their gift certificates all at once and cannot use the gift certificates for multiple transactions or on multiple occasions. Likewise, consumers cannot redeem any unused portion of LivingSocial gift certificates for the cash amount and cannot obtain replacement gift certificates redeemable for the unused funds.

26.   Moreover, LivingSocial does not provide cash refunds to consumers, or makes it extremely difficult to do so, when the business offering the products or services refuses to honor the LivingSocial gift certificate, such as when businesses cannot accommodate the rush of consumers attempting to redeem their gift certificates shortly before the expiration dates.  LivingSocial essentially places handcuffs on the manner in which consumers can redeem their gift certificates for the products and services offered, even though consumers have already paid in full for such products and services.

**LivingSocial and Its Retail Partners Profit from the Use of
Illegal Expiration Terms on LivingSocial Gift Certificates**

27.   LivingSocial targets two markets – consumers who seek products or services by purchasing LivingSocial gift certificates, and retail businesses who wish to promote their products and services through LivingSocial.  These retail businesses are willing to partner with LivingSocial and offer their products and services at a discount because LivingSocial promises to promote their products and services through its huge subscription base and guarantees them a specified volume of business.

28.   LivingSocial's business model, particularly its ability to establish partnerships with retail businesses nationwide, depends in large part on its systematic use of illegal expiration dates.  LivingSocial knows that its retail partners are not willing to offer their products and services at a discount to consumers through the sale of LivingSocial gift certificates without an agreement to limit the time period for which consumers can redeem the gift certificates.  Indeed, it has been reported by the Wall Street Journal that upwards of 40% of all "Daily Deal" type vouchers, such as those sold by LivingSocial, go unredeemed.[1]  "Daily deal" websites like LivingSocial reportedly pitch these redemption statistics as an incentive to the retail businesses they are wooing.  Accordingly, LivingSocial and its retail partners continue to flaunt the law by imposing illegal expiration dates on the LivingSocial gift certificates sold to consumers.

29.   LivingSocial attempts to circumvent federal and state gift certificate laws by inserting a disclaimer on some LivingSocial gift certificates in which it claims its expiration terms do not

---

[1]   Kelli B. Grant, *10 Things Daily Deal Sites Won't Say*, SmartMoney.com (March 29, 2011), www.smartmoney.com/spending/deals/10-things-daily-deal-sites-wont-say-1301404072442.

1    apply to any prepaid portion of the gift certificates. Such disclaimers are ineffective and provide no

2    defense for LivingSocial.

3        30.    First, the disclaimer is buried at the bottom of certain LivingSocial gift certificates in

4    a tiny, barely legible font that is readily overlooked by consumers. Second, the disclaimer is only

5    found on the voucher itself, which must be downloaded and printed by the consumer.  Thus,

6    consumers who do not download and print their gift certificates will never have access to, nor

7    knowledge of, the disclaimer.  Third, the disclosure neither excuses nor justifies LivingSocial's use

8    of illegal expiration periods because the placement of expiration dates on LivingSocial gift

9    certificates constitutes per se violations of federal and state laws, for which there is no applicable

10   exception.  Fourth, LivingSocial's disclaimer is ineffective as it puts the onus on consumers to

11   research their respective state's gift certificate laws as to the validity of expiration periods.

12       31.    LivingSocial reaps massive profits from this business model. LivingSocial reportedly

13   takes for itself 30% to 50% on the sale of each gift certificate.  LivingSocial reportedly made

14   $100 million dollars in revenue in 2010 and is expected to book $500 million in 2011.

15   LivingSocial's retail partners also profit from the increases in customer traffic that result from the

16   sale of LivingSocial gift certificates. Again, LivingSocial's and its retail partners' undue profits are

17   fueled by their use of illegal expiration periods on the gift certificates sold to consumers.

18   **Plaintiff Gosling's Purchase of a Creations Dessert House**
     **LivingSocial Gift Certificate with an Illegal Expiration Date**
19

20       32.    On or about February 24, 2010, Plaintiff received a "Daily Deal" e-mail offer from

21   LivingSocial for desserts at Creations Dessert House located in San Francisco.

22       33.    The "Daily Deal" offer, as featured on LivingSocial's website, required consumers to

23   pay $10.00 to LivingSocial in exchange for a gift certificate redeemable for $20.00 worth of Hong

24   Kong-style desserts at Creations Dessert House.

25       34.    The "fine print" section of the "Daily Deal" offer stated that the "Promotional value" of

26   the Creations Dessert House LivingSocial gift certificate "expires on February 22, 2011." The "fine

27   print" section also imposed the following restrictions: "No cash value and no cash back;" "Entire value

28   must be used in one visit;" and "Cannot be combined with any other promotion or offer."

CLASS ACTION COMPLAINT                                                              - 7 -

35.     Ms. Gosling purchased a single LivingSocial gift certificate for Creations Dessert House and made payment of $10.00 to LivingSocial through LivingSocial's website.

36.     Ms. Gosling subsequently received an e-mail from LivingSocial confirming her purchase of a LivingSocial gift certificate. The e-mail contained a link to LivingSocial's website from which Ms. Gosling could download and print the gift certificate. The Creations Dessert House LivingSocial gift certificate contained a statement that the certificate's "Expiration" was "**February 22, 2011**."

37.     Ms. Gosling was unable to redeem the LivingSocial gift certificate before the February 22, 2011 expiration period imposed by LivingSocial. After the expiration date, Ms. Gosling believed that the LivingSocial gift certificate she had purchased was no longer valid and could not be redeemed.

**Plaintiff Gosling's Purchase of a Butter LivingSocial**
**Gift Certificate with an Illegal Expiration Date**

38.     On or about March 24, 2010, Plaintiff received a "Daily Deal" e-mail offer from LivingSocial for food and drink at Butter, a local San Francisco bar and restaurant.

39.     The "Daily Deal" offer, as featured on LivingSocial's website, required consumers to pay $10.00 to LivingSocial in exchange for a gift certificate redeemable for $20.00 worth of food and drink at Butter.

40.     The "fine print" section of the "Daily Deal" offer stated that the "Promotional value" of the Butter LivingSocial gift certificate "expires on March 22, 2011." The "fine print" section also imposed the following restrictions: "No cash value and no cash back;" "Entire value must be used in one visit;" and "Cannot be combined with any other promotion or offer."

41.     Ms. Gosling purchased a single LivingSocial gift certificate for Butter and made payment of $10.00 to LivingSocial through LivingSocial's website.

42.     Ms. Gosling subsequently received an e-mail from LivingSocial confirming her purchase of a LivingSocial gift certificate. The e-mail contained a link to LivingSocial's website from which Ms. Gosling could download and print the gift certificate. The Butter gift certificate contained a statement that it "Must be redeemed by March 22nd, 2011."

CLASS ACTION COMPLAINT                                                          - 8 -

43.     Ms. Gosling was unable to redeem the LivingSocial gift certificate before the March 22, 2011 expiration period imposed by LivingSocial. After the expiration date, Ms. Gosling believed that the LivingSocial gift certificate she had purchased was no longer valid and could not be redeemed.

**Plaintiff Gosling's Purchase of an Always Tan Skin and Body LivingSocial Gift Certificate with an Illegal Expiration Date**

44.     On or about April 5, 2010, Ms. Gosling received a "Daily Deal" e-mail offer from LivingSocial for spa services at Always Tan Skin and Body located in San Francisco.

45.     The "Daily Deal" offer, as featured on LivingSocial's website, required consumers to pay $25.00 to LivingSocial in exchange for a gift certificate redeemable for $50.00 worth of waxing services or a 60-minute facial.

46.     The "fine print" section of the "Daily Deal" offer stated that the "Promotional value" of the Always Tan Skin and Body LivingSocial gift certificate "expires on April 2, 2011." The "fine print" section also imposed the following restrictions: "No cash value and no cash back;" and "Cannot be combined with any other promotion or offer."

47.     Ms. Gosling purchased a single LivingSocial gift certificate for Always Tan Skin and Body and made payment of $25.00 to LivingSocial through LivingSocial's website.

48.     Ms. Gosling subsequently received an e-mail from LivingSocial confirming her purchase of a LivingSocial gift certificate. The e-mail contained a link to LivingSocial's website from which Ms. Gosling could download and print the gift certificate. The Always Tan Skin and Body LivingSocial gift certificate contained a statement that it "Must be redeemed by April 2nd, 2011."

49.     Ms. Gosling was unable to redeem the LivingSocial gift certificate before the April 2, 2011 expiration period imposed by LivingSocial. After the expiration date, Ms. Gosling believed that the LivingSocial gift certificate she had purchased was no longer valid and could not be redeemed.

**Plaintiff Gosling's Purchase of a GoCar Tours LivingSocial Gift Certificate with an Illegal Expiration Date**

50.     On or about April 7, 2010, Ms. Gosling received a "Daily Deal" e-mail offer from LivingSocial for a self-guided tour of San Francisco at GoCar Tours.

51. The "Daily Deal" offer, as featured on LivingSocial's website, required consumers to pay $24.50 to LivingSocial in exchange for a gift certificate redeemable for a 1-hour or 2.5-hour self-guided GPS tour at GoCar Tours for 50% off.

52. The "fine print" section of the "Daily Deal" offer stated that the "Promotional value" of the GoCar Tours LivingSocial gift certificate "expires on May 27, 2010." The "fine print" section also imposed the following restrictions: "No cash value and no cash back;" "Entire value must be used in one visit;" and "Cannot be combined with any other promotion or offer."

53. Ms. Gosling purchased a single LivingSocial gift certificate for GoCar Tours and made payment of $24.50 to LivingSocial through LivingSocial's website.

54. Ms. Gosling subsequently received an e-mail from LivingSocial confirming her purchase of a LivingSocial gift certificate. The e-mail contained a link to LivingSocial's website from which Ms. Gosling could download and print the gift certificate. The GoCar Tours LivingSocial gift certificate contained a statement that the certificate's "Expiration" was "**May 27, 2010.**"

55. Ms. Gosling was unable to redeem the LivingSocial gift certificate before the May 27, 2010 expiration period imposed by LivingSocial. After the expiration date, Ms. Gosling believed that the LivingSocial gift certificate she had purchased was no longer valid and could not be redeemed.

**Plaintiff Gosling's Purchase of a Pizzeria Avellino**
**LivingSocial Gift Certificate with an Illegal Expiration Date**

56. On or about June 23, 2010, Ms. Gosling received a "Daily Deal" e-mail offer from LivingSocial for food and drink at Pizzeria Avellino located in San Francisco.

57. The "Daily Deal" offer, as featured on LivingSocial's website, required consumers to pay $15.00 to LivingSocial in exchange for a gift certificate redeemable for $30.00 worth of food and drink at Pizzeria Avellino.

58. The "fine print" section of the "Daily Deal" offer stated that the "Promotional value" of the Pizzeria Avellino LivingSocial gift certificate "expires on December 22, 2010."

59. Ms. Gosling purchased a single LivingSocial gift certificate for Pizzeria Avellino and made payment of $15.00 to LivingSocial through LivingSocial's website.

1    60.    Ms. Gosling subsequently received an e-mail from LivingSocial confirming her

2  purchase of a LivingSocial gift certificate.   The e-mail contained a link to LivingSocial's website

3  from which Ms. Gosling could download and print the gift certificate.   The Pizzeria Avellino

4  LivingSocial gift certificate contained a statement that the certificate's "Expiration" was

5  "**December 22, 2010**."   The "fine print" section of the certificate also imposed the following

6  restrictions: "No cash value and no cash back;" "Entire value must be used in one visit;" and

7  "Cannot be combined with any other promotion or offer."

8    61.    Ms. Gosling was unable to redeem the LivingSocial gift certificate before the

9  December 22, 2010 expiration period imposed by LivingSocial.   After the expiration date, Ms.

10  Gosling believed that the LivingSocial gift certificate she had purchased was no longer valid and

11  could not be redeemed.

12                                   **CLASS ALLEGATIONS**

13    62.    Plaintiff brings this nationwide class action lawsuit on behalf of herself and the

14  proposed Class members under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

15    63.    Plaintiff seeks certification of the following classes:

16    **Plaintiff Class (the "Class" and "Class members")**:

17         All persons in the United States who purchased or otherwise acquired a gift
           certificate issued by LivingSocial (*i.e.*, "voucher") with an expiration date that is
18         earlier than the expiration period provided under applicable federal and state laws.

19         Specifically excluded from the Class are Defendant; Defendant's officers,
           directors or employees; any entity in which Defendant has a controlling interest; any
20         of the affiliates, legal representatives, heirs, or assigns of Defendant; and any judges
           to whom this litigation is assigned, as well as their immediate families.
21
22    64.    **Numerosity**.   The plaintiff Class comprises millions of consumers throughout

23  California and the United States.   The Class is so numerous that joinder of all members of the Class

24  is impracticable.

25    65.    **Commonality and Predominance**. Common questions of law and fact exist as to

26  Plaintiff and all Class members and predominate over any questions which affect only individual

27  members of the Class. These common questions of law and fact include, without limitation:

28

CLASS ACTION COMPLAINT                                                                    - 11 -

(a)     Whether LivingSocial sold and issued gift certificates featuring and subject to expiration dates;

(b)     Whether LivingSocial's imposition of expiration dates on LivingSocial gift certificates violates federal and/or California state laws;

(c)     Whether LivingSocial engaged in deceptive and unfair business and trade practices related to the imposition of expiration dates on LivingSocial gift certificates and other onerous terms and conditions;

(d)     Whether Plaintiff and Class members are entitled to declaratory, injunctive and/or equitable relief; and

(e)     Whether Plaintiff and Class members are entitled to compensatory damages, including actual, statutory and punitive damages.

66.     **Typicality**. Plaintiff's claims are typical to the claims of Class members. Plaintiff and the members of the Class sustained damages arising out of LivingSocial's common course of conduct in violation of law as complained of herein. The damages of each Class member were caused directly by LivingSocial's wrongful conduct in violation of law as alleged herein.

67.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class and has no interests which are adverse to the interests of absent Class members. Plaintiff has retained counsel who have substantial experience and success in the prosecution of complex class action and consumer protection litigation.

68.     **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous actions would engender. Furthermore, the expenses and burden of individual litigants and the lack of knowledge of Class members regarding LivingSocial's activities, would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as

CLASS ACTION COMPLAINT                                                                      - 12 -

1    a class action. The cost to the court system of adjudication of such individualized litigation would be

2    substantial. The trial and litigation of Plaintiff's claims will be manageable.

3                                    **COUNT I**

4    **For Violations of the Credit Card Accountability Responsibility and Disclosure Act**
          **and Electronic Fund Transfer Act, 15 U.S.C. §1693, *et seq.*, on**

5                    **Behalf of Plaintiff and All Class Members**

6         69.     Plaintiff repeats and realleges each and every allegation contained above as if set

7    forth herein.

8         70.     The CARD Act, which amends the EFTA, prohibits the sale or issuance of gift

9    certificates that feature and are subject to expiration dates that are earlier than 5 years after the date

10    on which the gift certificates were issued.

11         71.     LivingSocial sold and issued LivingSocial "vouchers," which are "gift certificates,"

12    as defined under 15 U.S.C. §1693*l*-1(a)(2)(B), as they constitute promises that are: (a) redeemable at

13    a single merchant or an affiliated group of merchants; (b) issued in a specified amount that may not

14    be increased or reloaded; (c) purchased on a prepaid basis in exchange for payment; and (d) honored

15    upon presentation by such single merchant or affiliated group of merchants for goods or services.

16         72.     At all relevant times, LivingSocial gift certificates were sold and issued to consumers

17    through electronic fund transfer systems established, facilitated and monitored by LivingSocial.

18         73.     LivingSocial gift certificates are not exclusively issued in paper form, as LivingSocial

19    provides an e-mail link to consumers to download and print such gift certificates. Moreover,

20    consumers may download LivingSocial gift certificates directly to their mobile phones using

21    LivingSocial applications or by accessing LivingSocial's website.

22         74.     LivingSocial gift certificates are marketed and sold to the general public and are not

23    issued as part of any loyalty, award, or promotional program.

24         75.     LivingSocial violated the CARD Act and EFTA by selling and issuing and/or

25    agreeing to sell and issue gift certificates with expiration dates of less than five years, which is

26    plainly prohibited under §§1693*l*-1(a)(2)(B) and (c)(1).

27         76.     Under the regulations implementing the EFTA and CARD Act, no person may sell or

28    issue gift certificates with expiration dates unless there are policies and procedures in place to

CLASS ACTION COMPLAINT                                          - 13 -

1  provide consumers with a reasonable opportunity to purchase a certificate with at least five years

2  remaining until the certificate expiration date. 12 C.F.R. §205.20(e)(1).  LivingSocial violated this

3  provision by selling and issuing gift certificates with expiration dates of less than five years.

4  Moreover, LivingSocial's policies and procedures do not provide consumers with a reasonable

5  opportunity to purchase gift certificates with five years remaining until the expiration date.  In fact,

6  LivingSocial's policies and procedures regarding expiration dates are conflicting, confusing, hard to

7  find and easily overlooked by consumers.

8    77. As a direct and proximate result of LivingSocial's unlawful acts and conduct, Plaintiff

9  and Class members were deprived of the use of their money that was charged and collected by

10  LivingSocial through the sale of LivingSocial gift certificates with illegal expiration dates.

11    78. Pursuant to 15 U.S.C. §1693m, Plaintiff, on behalf of herself and the Class, seeks a

12  Court order for actual and statutory damages to be determined by the Court, injunctive relief, as well

13  as reasonable attorneys' fees and the cost of this action.

14  **COUNT II**

15  **For Violations of California Business & Professions Code §17200, *et seq.*,
on Behalf of Plaintiff and Class Members Who Reside in California**

16

17    79. Plaintiff repeats and realleges each and every allegation contained above as if set
forth herein.

18

19    80. Section 17200 of the California Business & Professions Code ("Unfair Competition

20  Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

21    81. Section 17200 specifically prohibits any "*unlawful* . . . business act or practice."

22  LivingSocial has violated §17200's prohibition against engaging in an unlawful act or practice by,

23  *inter alia*, selling and issuing and/or agreeing to sell and issue LivingSocial gift certificates that feature
and are subject to expiration dates that are prohibited under both federal and California state laws.

24

25    82. LivingSocial's ongoing sale and issuance of gift certificates with expiration dates
violates the CARD Act and EFTA, 15 U.S.C. §1693, *et seq.*, as discussed above.

26

27    83. LivingSocial's conduct also violates California's gift certificate laws, Cal. Civ. Code
§1749.5, and the CLRA, §1750 *et seq.*, as discussed below.  In addition to prohibiting any person or

28

CLASS ACTION COMPLAINT    - 14 -

1  entity from selling a gift certificate that contains any expiration date, §1749.5, *et seq.*, provides that gift

2  certificates with unused funds are redeemable for their cash value or subject to replacement with a new

3  gift certificate containing the unused funds, depending on the dollar amount remaining on the gift

4  certificate. LivingSocial violates these additional provisions of §1749.5 by providing that consumers

5  must use their LivingSocial gift certificates in the course of a single transaction and through their

6  practice of refusing cash refunds to consumers for any unused funds toward their gift certificate.

7         84.    Plaintiff and Class members reserve their right to allege other violations of law which

8  constitute other unlawful business acts or practices, as further investigation and discovery warrants.

9  Such conduct is ongoing and continues to this date.

10        85.    Section 17200 also prohibits any "*unfair* . . . business act or practice." As described

11  in the preceding paragraphs, LivingSocial engaged in the unfair business practice of selling and

12  issuing LivingSocial gift certificates with illegal and deceptive expiration dates.

13        86.    LivingSocial, with the approval and agreement of its retail business partners, imposed

14  other unfair conditions on its gift certificates, including forcing consumers to redeem the gift

15  certificates in the course of a single transaction and not providing for the exchange of any unused

16  portion of the gift certificates for cash value.

17        87.    LivingSocial's business practices, as detailed above, are unethical, oppressive and

18  unscrupulous, and they violate fundamental policies of this state. Further, any justifications for

19  LivingSocial's wrongful conduct are outweighed by the adverse effects of such conduct. Thus,

20  LivingSocial engaged in unfair business practices prohibited by California Business & Professions

21  Code §17200, *et seq.*

22        88.    Section 17200 also prohibits any "*fraudulent business act or practice*." LivingSocial

23  violated this prong of the UCL by disseminating and/or agreeing to disseminate, through

24  LivingSocial's website and other promotional channels, misleading and partial statements about

25  LivingSocial gift certificates that have a tendency to mislead the public. Further, LivingSocial

26  violated this prong of the UCL by omitting material information about LivingSocial gift certificates

27  with the intent to induce reliance by consumers to purchase such gift certificates. LivingSocial's

28  claims, nondisclosures and misleading statements concerning LivingSocial gift certificates, as more

CLASS ACTION COMPLAINT                                                              - 15 -

1   fully set forth above, were false, misleading and/or likely to deceive the consuming public within the

2   meaning of California Business and Professions Code §17200.

3       89.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading

4   advertising." For the reasons set forth above, LivingSocial engaged in unfair, deceptive, untrue and

5   misleading advertising in violation of California Business & Professions Code §17200.

6       90.   LivingSocial's conduct caused and continues to cause substantial injury to Plaintiff

7   and other Class members. Plaintiff was harmed at least in the following ways as she: (1) acquired

8   less in the transaction for her LivingSocial gift certificate than she would have absent LivingSocial's

9   unlawful and deceptive conduct; (2) had her present and future interest in the full value of her

10  LivingSocial gift certificate diminished; (3) was deprived of money to which she has a cognizable

11  claim; and (4) entered into a transaction, costing her money, that would otherwise have been

12  unnecessary absent LivingSocial's unlawful and deceptive conduct. Thus, Plaintiff has suffered

13  injury in fact and lost money as a result of LivingSocial's unfair conduct.

14      91.   Additionally, pursuant to California Business & Professions Code §17203, Plaintiff

15  seeks an order requiring LivingSocial to immediately cease such acts of unlawful, unfair and

16  fraudulent business practices and requiring LivingSocial to return the full amount of money

17  improperly collected to all those who have paid them.

18                           **COUNT III**

19  **For False and Misleading Advertising in Violation of California Business & Professions**
                **Code §17500, *et seq.*, on Behalf of Plaintiff and Class Members**
20                      **Who Reside in California**

21      92.   Plaintiff repeats and realleges each and every allegation contained above as if set

22  forth herein.

23      93.   California Business & Professions Code §17500, *et seq.*, prohibits various deceptive

24  practices in connection with the dissemination in any manner of representations which are likely to

25  deceive members of the public to purchase products and services such as the LivingSocial gift

26  certificates offered by LivingSocial.

27      94.   LivingSocial's acts and practices as described herein have deceived and/or are likely

28  to deceive Plaintiff and Class members. LivingSocial used its website and targeted "Daily Deal"

CLASS ACTION COMPLAINT                                              - 16 -

1  promotions, along with other social media, such as Facebook and Twitter, to extensively market and

2  advertise the gift certificates with misleading and illegal expiration dates and other deceptive terms

3  to consumers.

4         95.    By its actions, LivingSocial has been and is disseminating uniform advertising

5  concerning LivingSocial gift certificates, which by its nature is unfair, deceptive, untrue, or

6  misleading within the meaning of California Business & Professions Code §17500, *et seq.* Such

7  advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons

8  detailed above.

9         96.    LivingSocial intended Plaintiff and Class members to rely upon the advertisements

10 and numerous material misrepresentations as set forth more fully elsewhere in the Complaint. In

11 fact, Plaintiff and Class members relied upon the advertisements and misrepresentations to their

12 detriment.

13        97.    The above described false, misleading, and deceptive advertising LivingSocial

14 disseminated continues to have a likelihood to deceive in that LivingSocial has failed to disclose the

15 true and actual limitations of its gift certificates. LivingSocial has failed to instigate a public

16 information campaign to alert consumers of these limitations, which continues to create a misleading

17 perception of the efficacy of their gift certificates.

18                                    **COUNT IV**

19 **For Violations of the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.*,**
   **on Behalf of Plaintiff and Class Members Who Reside in California**

20
21        98.    Plaintiff repeats and realleges each and every allegation contained above as if set

   forth herein.
22
23        99.    The California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*,

24 provides protection for California consumers against unfair, deceptive and unlawful practices, and

   unconscionable commercial practices in connection with the sale of any goods or services.
25
26        100.   Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code §1761(d). The

27 LivingSocial gift certificates sold and issued by LivingSocial constitute "goods" and "services" as

28 defined by Cal. Civ. Code §1761(a) and (b), and Plaintiff's and Class members' purchases of

---

CLASS ACTION COMPLAINT                                                              - 17 -

1   LivingSocial gift certificates constitute "transactions," as that term is defined in Cal. Civ. Code
2   §1761(e).

3       101.   LivingSocial's ongoing placement of illegal expiration dates and imposition of other
4   deceptive sales terms on LivingSocial gift certificates violate the following subsections of Cal. Civ.
5   Code §1770(a) in these respects:

6           (a)   LivingSocial's acts and practices constitute misrepresentations that
7   LivingSocial gift certificates have characteristics, benefits or uses which they do not have
8   (§1770(a)(5));

9           (b)   LivingSocial misrepresented that its gift certificates are of a particular
10  standard, quality and/or grade, when they are of another (§1770(a)(7));

11          (c)   LivingSocial's acts and practices constitute the advertisement of goods,
12  without the intent to sell them as advertised (§1770(a)(9));

13          (d)   LivingSocial's acts and practices fail to represent that the transaction
14  involving LivingSocial gift certificates confers or involves obligations that are prohibited by law,
15  particularly the imposition of illegal expiration dates and other onerous sales terms (§1770(a)(14));

16          (e)   LivingSocial's acts and practices constitute representations that LivingSocial
17  gift certificates have been supplied in accordance with previous representations when they have not
18  (§1770(a)(16)); and

19          (f)   LivingSocial inserted unconscionable provisions in the contract for the
20  purchase of gift certificates, specifically illegal expiration dates and other onerous, one-sided
21  restrictions as to the gift certificates' use and redemption (§1770(a)(19)).

22      102.   By reason of the foregoing, Plaintiff and the Class haven been irreparably harmed,
23  entitling them to injunctive relief, disgorgement and restitution.

24      103.   LivingSocial's placement of illegal expiration dates and imposition of other deceptive
25  sales terms as set forth more fully elsewhere in this Complaint were false, deceptive, and/or
26  misleading and in violation of the CLRA.

27      104.   Pursuant to §1782 of the CLRA, Plaintiff notified LivingSocial's in writing of the
28  particular violations of §1770 of the CLRA and demanded LivingSocial rectify the actions described

1  above by providing complete monetary relief, agreeing to be bound by their legal obligations and to

2  give notice to all affected customers of their intent to do so.  Plaintiff sent this notice by certified

3  mail, return receipt requested, to LivingSocial's principal place of business.

4       105.  If LivingSocial fails to adequately respond to Plaintiff's demand within 30 days of the

5  letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief,

6  including claims for compensatory and exemplary damages.  Plaintiff is already entitled to the relief set

7  forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

8  **PRAYER FOR RELIEF**

9      Plaintiff, individually, and on behalf of the Class, prays for judgment and relief against

10  LivingSocial as follows:

11      A.  For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of

12  Civil Procedure on behalf of the proposed classes described herein and appointing Plaintiff to serve

13  as class representative and Plaintiff's, counsel Robbins Geller Rudman & Dowd LLP, to serve as

14  Lead Counsel for the Class;

15      B.  For an order enjoining LivingSocial from continuing to sell and issue LivingSocial

16  gift certificates with illegal and/or deceptive expiration dates;

17      C.  For an order requiring LivingSocial to fund a corrective advertising campaign in

18  order to remedy its wrongful and illegal conduct;

19      D.  For an order awarding restitution of the monies LivingSocial wrongfully acquired by

20  its wrongful and illegal conduct;

21      E.  For an order requiring disgorgement of monies wrongfully obtained as a result of

22  LivingSocial's wrongful and illegal conduct;

23      F.  For compensatory and punitive damages, including actual and statutory damages,

24  arising from LivingSocial's wrongful and illegal conduct;

25      G.  For an award of reasonable attorneys' fees and all costs and expenses incurred in the

26  course of prosecuting this action;

27      H.  For pre-judgment and post-judgment interest at the legal rate; and

28      I.  For such other and further relief as the Court deems just and proper.

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury on all issues so triable.

3    DATED:  April 28, 2010

ROBBINS GELLER RUDMAN
4                                    & DOWD LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
5    PHONG L. TRAN

6

7    _____
RACHEL L. JENSEN

8

655 West Broadway, Suite 1900
9    San Diego, CA  92101
Telephone:  619/231-1058
10   619/231-7423 (fax)

11   Attorneys for Plaintiff

12   S:\CptDraft\Consumer\CPT Living Social ND Cal.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                    - 20 -